ROBERTSON et al. v. LION INS. CO. et al.

(Circuit Court, W. D. Virginia. April 24, 1896.)

AWARD—SETTING ASIDE.
Plaintiff and an insurance company, being unable to agree as to the amount of a loss under a policy of fire insurance, resorted to the arbitration clause of such policy. Plaintiff and the insurance company each proposed an arbitrator. The arbitrator proposed by the insurance company was objected to by plaintiff, and another was proposed and accepted in his stead. The arbitrators then proceeded to select an umpire, and, two names being proposed, plaintiff, after inquiry, accepted one of them. The arbitrators having disagreed, the umpire made an award, which differed from the estimate of plaintiff's arbitrator. Plaintiff then brought suit to set aside the award, alleging that the umpire and the insurance company's arbitrator had acted fraudulently and unfairly. No evidence, however, was presented which showed any undue partiality, though the award differed from the estimate of some persons familiar with goods similar to those injured in the fire. Held, that the award should not be set aside.

In Equity.

Kirkpatrick & Kirkpatrick, Blackford, Horsely & Blackford, and A. W. Nowlin, for complainants.

Peatross & Harris, for defendants.
Before SIMONTON, Circuit Judge, and PAUL, District Judge.

SIMONTON, Circuit Judge. This is a bill to set aside an award made after a loss by fire, pursuant to the terms of a policy of insurance. The complainant is a merchant of Lynchburg, Va., engaged in the ready-made clothing business. He sustained the loss, and is dissatisfied with the award.

The law on the subject is not disputed. It is clearly stated in 4 Minor, Inst. 152. Awards can be set aside only for:

"(1) Improper conduct of the arbitrators; (2) improper conduct of the parties, or one of them; (3) illegality or injustice apparent on the face of the award itself."

It is stated clearly and fully by Mr. Justice Grier in Burchell v. Marsh, 17 How. 350:

"Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation. 'In order,' says Lord Thurlow (Knox v. Symmonds, 1 Ves. Jr. 369), 'to induce the court to interfere, there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award or to be made out by evidence; but, in case of mistake, it must be made out to the satisfaction of the arbitrator, and that, if it had not happened, he should have made a different award. Courts should be careful to avoid a wrong use of the word 'mistake,' and, by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over awards. The same result would follow if the court should treat the arbitrators as guilty of corrupt partiality, merely because their award is not such a one as the chancellor would have given. We are all too prone, perhaps, to impute either weakness of intellect or corrupt motives to those who differ with us in opinion."

The question, then, resolves itself into a question of fact. The insured and the insurer not being able to agree upon the amount of the loss, a resort was had to the arbitration clause in the policy. The insured proposed as his arbitrator R. B. Schenck, of Lynchburg. The insurer proposed a name of its arbitrator. The person named was promptly objected to by the assured. The name was withdrawn, and A. C. Westbrook, of Atlanta, was named and was accepted in his stead. The bill is filled with grave charges against the character and judgment of this arbitrator. But the record fails to disclose any evidence whatever reflecting upon his character, either as an experienced or as an honest man. The two arbitrators, having been sworn according to law, proceeded to select an umpire, to decide between them in case they should differ. This umpire was selected, before they had begun possibly, certainly before they had compiled their own appraisement; and very properly. Then, before the possibility of a heated discussion over differences of opinion, they could more easily agree upon an umpire. A gentleman from Richmond was selected. His business engagements compelled him to decline. Thereupon two names were submitted, of persons resi-

dent in Baltimore. Robertson, the insured, then communicated with Oppenheimer & Co., his friends and creditors in that city, giving them the names and addresses of these two persons, stating his purpose in asking about them, and requesting advice with regard to them. In reply, he was advised to select I. George Baetjer, one of the persons named. He was then selected as umpire. After his selection, Westbrook, who, according to the evidence, had no personal acquaintance with him, wrote to know if he would serve. He replied assenting to act; and, having business, attending court as a witness in a county of Virginia, and other business at Roanoke, he called at Lynchburg on his way home, and found the arbitrators about concluding their work. He thereupon took his oath as umpire, and, the arbitrators having differed, he concluded the award. The bill contains grave charges against him also. But the great preponderance of the evidence, including the concurrent opinion of witnesses of the highest respectability and business character in Baltimore, who knew him, and had full opportunity of knowing him for years, establishes his character as a man of high integrity, great business capacity, and large experience. In the estimate of losses by fire, he had been frequently employed both by insurers and insured, and his opinions were valued and respected. In his pleadings and in the argument, the complainant charged that these two men, Westbrook and Baetjer, were professional arbitrators, hirelings of insurance companies, and obedient to their behests, who had been foisted upon the complainant fraudulently, to his wrong.

The record shows no justification for charges of this kind. The arbitrators were sworn in on 14th April, 1894. They made their finding on the 21st. The umpire made his award on 24th of that month. Every fact concerning the residence, business character, employment, and relation of Westbrook and of Baetjer were either known to, or were within easy reach of, the complainant. But he, having made no objection to Westbrook, and having intervened actively to secure Baetjer, made no sign of disapproval during the period of the arbitration and award. Clearly, he waited on the event. The true test of the award is this: Is this of so extravagant a character as to warrant the conclusion that it was found and concluded from a partisan bias towards one of the parties? If so, under the law, it cannot stand. We have gone over the testimony with great care, and cannot see anything which can lead to such a conclusion. As has been seen, the umpire is a man of character, experience, and ability. He went carefully over the stock, which had been arranged in parcels, examining specially each parcel, and putting his valuation upon it. He differed, it is true, with some merchants in that line of business in Lynchburg. But they observed and estimated the stock as a whole, lying as it was left after the fire. He went into it in detail. He differed also with the arbitrator of the complainant. But the estimate of this arbitrator is clearly extravagant, not justified by the experience of persons who purchased the damaged stock. But, above all, he was chosen to make the award by both parties under the terms of their contract,—the judge of their own selection in this domestic tribunal. His er-

rors, if errors there were, were errors of judgment, over which we have no control. They do not betray fraud, fraudulent dealing, gross irregularity, gross partiality, or partisanship. The award cannot be disturbed. Let the bill be dismissed.

PAUL, District Judge, concurred.